[Civ. No. 455.   Fifth Dist.   Mar. 10, 1965.]

MARVIN WEISMAN, Plaintiff and Appellant, v. JOHN C. CLARK, Defendant and Respondent.

Selwyn J. Monarch for Plaintiff and Appellant.

Jess A. Barnett for Defendant and Respondent.

BROWN (R.M.), J.—Appellant appeals from a judgment in favor of respondent denying appellant relief under a complaint based upon a breach of contract. Another defendant, Richard Hughes, defaulted and judgment was entered against him for $37,890, but respondent filed an answer and after a trial was successful. A motion for new trial was denied and the appeal was timely made.

On June 28, 1960, landlord Jenkins leased the premises known as the Sans Gene Restaurant to appellant. The lease provided for a minimum payment of rent and excess rental on a percentage basis. The lease also provided that it could be assigned to any corporation provided appellant owned at least 50 per cent of the stock and remained active in the operation thereof and was personally liable therefor.

In September 1960 the appellant formed the corporation Sans Gene, Inc., and assigned the lease to it, receiving therefor 16 shares (or 40 percent) of the stock. On May 11, 1961,

the appellant and the other stockholders entered into an agreement to sell all the stock to Hughes and Clark. Appellant was to receive payment for his 16 shares by a complicated formula which included his stock, certain notes owned by the corporation, plus other consideration. The following month the restaurant closed and on September 13, 1961, the corporation was adjudged a bankrupt. Thereafter, the appellant sued both Hughes and Clark for $36,970.

At no time did the appellant ever obtain the consent of Jenkins to the assignment either before or after the sale to Hughes and Clark.

After a trial, judgment was entered against the appellant and in favor of Clark, and the findings were that the appellant did not have nor did he retain a 50 per cent interest in Sans Gene, Inc.; that the lease agreement was in default by such an assignment and that appellant did not intend to, nor did he, remain active in the business, in violation of the lease; that appellant did not obtain written consent from the landlord to the assignment, and that there was failure of consideration for the above reasons.

The testimony showed that up to May 11th the appellant had always paid the rent, that the landlord did not know who exactly had been paying the rent. When the prospective sale came up to Hughes and Clark, he refused to consent to the assignment on the ground that the financial statement which was given him was unsatisfactory.

The agreement of May 11th was signed by all the parties except one of the original stockholders who had only two shares of stock. It set forth the fact that the assignment of the lease had been made to the corporation by the stockholders' selling their stock and notes, and the purchase price therefor; that the sellers represented that the sale of said shares and notes would not invalidate the lease or the lessee's interest therein then held by the corporation, assignee of appellant, and set forth details as to the assets and liabilities.

There were many discussions and negotiations between the landlord and the prospective buyers. The landlord testified that he had not consented to the purported assignment of the lease back in September 1960 and was not aware of the assignment, though he had been paid the rent.

The stock and notes were signed over to Hughes and Clark; possession was surrendered; $2,000 was paid to appellant; and then appellant resigned, as agreed, as a director and officer of the corporation, and the Alcoholic Beverage Control Board was notified of the sale.

It is admitted that at the time the lease was transferred to the corporation the appellant owned only 40 per cent of the stock.

While the landlord ultimately learned of the change of the stock ownership of the original corporation, he did not at any time file an action to forfeit said lease. ██ Mere notice is insufficient to forfeit a lease, without declaring a forfeiture. The matter is discussed in *People* v. *Klopstock,* 24 Cal.2d 897, where it is stated at pages 901-902 [151 P.2d 641]:

" 'The assignment of the lease without the consent of the lessor did not of itself terminate the lease or render the assignment void but the making of such assignment merely gave to the lessor certain rights to be exercised in the manner provided by law. [Citations.] If the lessor desired to stand upon the covenant against assignment, he could have given notice of his election to declare a forfeiture of the lease and could have sued for breach of the covenant. He could also have had his remedy in unlawful detainer if possession had been thereafter withheld following proper notice. But we find no authority indicating that the lessor had the option of merely giving notice of the invalidity of the assignment without declaring a forfeiture, . . .' [*Northwestern Pacific Railroad Co.* v. *Consumers Rock & Cement Co.,* 50 Cal.App.2d 721, 723 (123 P.2d 872).]

"The restriction as to the condition of assignment is a personal covenant for the benefit of the lessor and until he elects to take advantage of the breach as authorized by law, the assignment remains a valid and binding conveyance of the leasehold interest as to all other parties. [Citations.] Upon this premise the successive assignments, including that to the defendant Elerding, though made without the written consent of the lessor, were merely *voidable,* not void; there was no ipso facto termination of the lease by reason of the lessee's failure to obtain the lessor's written consent to assignment. Since the lessor did not elect to exercise its option to *avoid* the original assignment in the manner prescribed by law, its notice in its above-mentioned letters to the first assignee, Consumers Rock & Cement Company, that it did not recognize the validity of the assignment gave no legal force to its demand therein that such assignee remove all property owned by it from the leased premises within a stated period of time. There was yet *no effective demand by the lessor for surrender of possession* as contemplated under the

provisions of the lease to be the base starting point for the limitation of time allowed the lessee (or its assignee) to protect its right to remove its property from the premises. By such action the lessor was not following the procedure required for the enforcement of the terms of the lease, and therefore the original assignee of the lessee was in lawful possession of the premises. [Citation.] While the course of action pursued by the lessor—notice to the assignee of the 'invalidity of the assignment' coupled with the demand that it remove its property from the premises and the refusal to accept the tender of rent—unquestionably was sufficient to apprise the assignee that it *might be* dispossessed because of the lessee's violation of the covenant in question, under the authorities above cited the lessor's option to *void* the objectionable transfer depended upon its *declaration of a forfeiture upon proper notice* as provided by law. But the lessor did not take advantage of the exclusive remedy available to it for termination of the lease, and accordingly the defendant Elerding, through mesne assignments, succeeded to all the rights of the lessee.''

In *Buchanan* v. *Banta,* 204 Cal. 73, at pages 76-77 [266 P. 547], it was said: ''The law is that where there is a clause in a lease that it shall not be assigned without previous written consent of the lessor, and this covenant is breached, the lessor has only the option to forfeit the lease for such breach; the assignment is not void, but voidable only at the option of the lessor, which option he must exercise according to law [citations].''

An assignment in violation of the covenant is not void and does not void the lease but passes the term, and the only remedy for such a violation is an action for breach of covenant. (*Randol* v. *Tatum,* 98 Cal. 390, 398 [33 P. 433].)

Such a restriction against assignment is the personal covenant for the benefit of the lessor unless he elects to take advantage of the breach and thus the assignment remains valid until he does so.

While the landlord testified that he did not know of the assignment, it cannot be said that he waived the requirement of knowledge by the acceptance of rent, but upon his learning the facts, he then had the option to decide whether or not he wanted to declare a forfeiture or proceed with the lease.

A waiver is the relinquishment of a known right. Hence, there must be actual knowledge of the existence of

the fact upon which such right can be predicated. ■ There is no waiver on the part of the lessor due to an acceptance of rent without actual knowledge of the assignment or sublease. (*Goodwin* v. *Grosse,* 56 Cal.App. 615 [206 P. 138].) Such knowledge must be actual, not constructive. (*German-American Savings Bank* v. *Gollmer,* 155 Cal. 683 [102 P. 932, 24 L.R.A. N.S. 1066].)

■ ''The assignment of a lease in violation of a covenant against assignment without the consent of the lessor is nevertheless a binding assignment which passes the leasehold estate, and with which runs all covenants touching the land. Such an assignment in violation of the covenant is, however, subject to the option in the lessor to forfeit the lease.'' (*Chapman* v. *Great Western Gypsum Co.,* 216 Cal. 420, 427 [14 P.2d 758, 85 A.L.R. 917].)

■ The lessor will not be deemed estopped to declare a forfeiture because of violation of lease provisions against assignment without his consent if he has been lulled by evasion or false statements of the lessee. (*Weintraub* v. *Weingart,* 98 Cal.App. 690 [277 P. 752].) In *Weintraub,* it was said at page 701 : ''Appellants seem to have successfully lulled respondent's suspicions of the true state of affairs up to the time of commencing this action. This they did by making evasive and even false statements. They are in no position to urge an estoppel on respondent's part.''

■ This action, though, is not brought by the landlord, though he has the option to do so. At no time did the landlord elect to cause a forfeiture of the lease and until such time as he did, the lease as between appellant and Sans Gene, Inc. was valid and the assignment was likewise valid and binding. Such lease was not affected by the transfer of the shares and notes of the corporation by appellant to respondent.

The appellant in his agreement represented that the sale of the shares of stock would not invalidate the lease. No one knows what the landlord will do with respect to his option to forfeit the lease, even though he refused at the date of the sale of the stock to consent to the transfer. His remedy is to file suit for a breach of the agreement and declare a forfeiture. As to appellant's representation, no estoppel was raised by the pleadings or at the trial.

The judgment is reversed.

Conley, P. J., and Stone, J., concurred.